Case No. 24-2060

# IN THE UNITED STATES COURT OF
# APPEALS FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA**
Plaintiff-Appellee

v.

**SAMANTHA GILLIAM**
Defendant-Appellant

*On Appeal from the United States District*
*Court for the Eastern District of Michigan*

# BRIEF IN SUPPORT OF MOTION TO WITHDRAW PURSUANT TO
# *ANDERS V. CALIFORNIA*, 386 U.S. 738 (1967)

TYLER M. CAVINESS
LAW OFFICE OF TYLER M. CAVINESS
625 Market Street, Suite 1000
Knoxville, Tennessee 37902
(865) 936-9499
tyler@cavinesslawfirm.com
*Counsel for Samantha Gilliam*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..........................................................................................1

I.     SUBSTANTIVE AND PROCEDURAL FACTS...........................................2

II.    ISSUE OF ARGUABLE MERIT ..................................................................

      A.     Whether Ms. Gilliam's plea should be vacated because the admission that she used threats of drug withdrawal to "cause [the victims] to engage in commercial sex acts" is insufficient to establish the element of coercion necessary to support a conviction for conspiracy to violate 18 U.S.C. § 1591(b)(1), and thus the district court failed to meet the requirements of Fed. R. Crim. P. 11(b)(3) by accepting the plea without the necessary factual basis?........................................................................................8

           1.     Standard of review...................................................................8

           2.     The factual basis in the plea agreement was insufficient to meet the "coercion" element of 18 U.S.C. § 1591(b)................8

           3.     The record establishes a reasonable probability that, had Ms. Gilliam known her conduct did not meet the elements of 18 U.S.C. §1591, she would not have pleaded guilty .........14

III.   REASONS SUPPORTING COUNSEL'S BELIEF THAT AN APPEAL IS FRIVOLOUS..........................................................................16

      A.     The appellate waiver in Ms. Gilliam's plea agreement likely forecloses any argument concerning the factual basis of her plea or the district court's compliance with Fed. R. Crim. P. 11 ...............16

IV.   CONCLUSION............................................................................................18

CERTIFICATE OF SERVICE.....................................................................................19

ADDENDUM................................................................................................................20

# I.    SUBSTANTIVE AND PROCEDURAL FACTS

Samantha Gilliam was charged in the United States District Court for the Eastern District of Michigan related to her alleged involvement in a prostitution ring. According to the Government, Ms. Gilliam's boyfriend, co-defendant Quiyemabi Summerlin, used Ms. Gilliam's home as a location where women engaged in commercial sex acts. *See Criminal Complaint*, R. 1, Page ID # 4. The Government further alleged that Mr. Summerlin used the home to distribute heroin and crack cocaine and that he used drugs and violence to compel the women to continue the commercial sex acts. *Id.* at Page ID #. 4. The Government's position was that Ms. Gilliam knew about the commercial sex acts, received proceeds from the acts, and conspired to use the women's drug addictions to cause them to engage in further commercial sex acts. *Id.* at Page ID # 5-8.

Ms. Gilliam was charged via criminal complaint on February 24, 2022 with conspiracy to engage in sex trafficking using force, fraud, and coercion, and maintaining a drug premises, in violation of 18 U.S.C. § 1594(c) and 21 U.S.C. § 856, respectively. After her arrest, Ms. Gilliam was released from custody on pretrial supervision and an appearance bond. *Order Setting Conditions of Release*, R. 8, Page ID # 82; *Appearance Bond*, R. 9, Page ID # 87.

The grand jury for the Eastern District of Michigan returned a superseding indictment against Ms. Gilliam on April 14, 2022. Superseding Indictment, R. 23,

Page ID # 94. She was charged jointly with co-defendant Summerlin with the following:

> Count One – Conspiracy to engage in sex trafficking, in violation of 18 U.S.C. § 1594(c);
>
> Count Two – Sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1);
>
> Count Six – Sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(1); and
>
> Count Eight – Maintaining a drug premises in violation of 21 U.S.C. § 856(a)(1).[1]

On May 24, 2023, Ms. Gilliam was charged via second superseding indictment. Counts one and two remained unchanged. *Second Superseding Indictment*, R. 43, Page ID # 191-92. The second superseding indictment expanded the time frame of the alleged offense in Count Six, sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591. *Id*. at Page ID # 194. It also included two additional counts (counts seven and eight) against Ms. Gilliam of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §1591. *Id*. at Page ID # 196-97. The remaining new charges were against Mr. Summerlin.

On August 24, the Government filed a motion to revoke Ms. Gilliam's bond and requested a no-contact order between Ms. Gilliam and her co-defendant based

---

[1] The other counts of the superseding indictment charged only Mr. Summerlin. The superseding indictment also contained criminal forfeiture allegations against Mr. Summerlin and Ms. Gilliam.

on alleged pre-trial contact between Ms. Gilliam and Mr. Summerlin. *Motion to Revoke Defendant Gilliam's Bond and Requesting a No-Contact Order for Summerlin*, R. 32, Page ID # 138. Ms. Gilliam filed a response to the Government's Motion. *Response to Government's Motion to Revoke Defendant Gilliam's Bond*, R. 35, Page ID # 152. After a hearing on the motion, the district court held that Ms. Gilliam was in violation of her conditions of release, but stopped short of ordering detention. *Transcript of Pretrial Release Violation Hearing,* R. 95, Page ID # 838-43. Instead, the Court added the additional pretrial release requirements that Ms. Gilliam change her phone number and email address and also entered the no-contact order requested by the Government. *Id.*; *see also Order Granting Motion for No Contact Order*, R. 37, Page ID # 163.

On April 3, 2023, Ms. Gilliam filed a motion to suppress statements made to law enforcement based on statements elicited after Ms. Gilliam "asserted her rights [under the Fifth Amendment to the United States Constitution.]" *Combined Motion and Brief in Support of Motion to Suppress Statements Made in Violation of M. Gilliam's 5th Amendment Right to Remain Silent,* R. 39, Page ID # 176. The Government responded that it did not intend to introduce Ms. Gilliam's statements at trial. *Response to Defendant Gilliam's Motion to Suppress Statement (ECF No. 39)*, R. 42, Page ID # 186. Ms. Gilliam filed a motion to withdraw her motion to suppress that the district court granted. *Motion to Withdraw [ECF 39] Motion and*

*Brief in Support of Motion to Suppress Statements Made in Violation of Ms. Gilliam's 5th Amendment Right to Remain Silent*, R. 44, Page ID # 204.

On October 23, 2023, the Pretrial Services Agency filed a Petition for Action on Conditions of Pretrial Release, R. 53, Page ID # 226, based on continuing marijuana use and Ms. Gilliam's failure to resolve outstanding warrants in other courts. Following a hearing on November 6, 2023, the district court took no action related to Ms. Gilliam's pretrial release status, but reiterated to Ms. Gilliam that she was on thin ice. The district court also explored options with Ms. Gilliam and her attorney about the changes that could be made to ensure Ms. Gilliam's success on pretrial release. *See Transcript of Bond Violation Hearing*, R. 94, Page ID # 799-814.

On April 30, 2024, Ms. Gilliam entered a guilty plea pursuant to a plea agreement. *See Plea Agreement*, R. 60, Page ID # 255. Ms. Gilliam entered a plea to Count One, conspiracy to engage in sex trafficking, and Count Ten, maintaining a drug premises, of the Second Superseding Indictment. *Id*. The Government recommended that Ms. Gilliam should receive a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a). *Id.* at Page ID # 261-62. The parties recommended that Ms. Gilliam's base offense level for Count One, pursuant to U.S.S.G. §2G1.1(a)(1), would be 34. *Id*. at Page ID # 263. The Government recommended that the sentence imposed not exceed the bottom of the guideline

range. *Id*. at Page ID # 264.

The plea agreement contained appellate and collateral review waivers:

> The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the top of the guideline range determined by the Court, the defendant also waives any right she may have to appeal her sentence on any grounds….

> The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

*Plea Agreement*, R. 60, Page ID # 271-72.

The district court accepted Ms. Gilliam's guilty plea after a colloquy regarding her rights and understanding of the guilty plea. *See Transcript of Plea Hearing*, R. 89, Page ID # 694.

The Government filed a sentencing memorandum advocating for a custodial sentence of 108 months. *Government's Sentencing Memorandum*, R. 79, Page ID # 589. Ms. Gilliam filed a sentencing memorandum requesting a non-custodial sentence. *Defendant Samantha Gilliam's Sentence Memorandum and Request for a Variance from the Guidelines*, R. 77, Page ID # 570. Although she did not file an

objection to the presentence report, Ms. Gilliam noted in her sentencing memorandum that she disagreed with the United States Probation Office's recommendation that Ms. Gilliam's base offense level should be calculated as 38 (instead of 34, as contemplated in the plea agreement), based on U.S.S.G. § 3D1.4. *Id*. at Page ID # 565-66.

Following a sentencing hearing, the district court granted a downward variance and sentenced Ms. Gilliam to a custodial sentence of 96 months on Counts One and Ten of the second superseding indictment, to be served concurrently. The court imposed additional requirements that Ms. Gilliam be placed on supervised release for an effective term of five years after her release from custody and comply with specified conditions related to her supervised release. *Transcript of Sentencing Hearing*, R. 88, Page ID # 686-91; *Judgment*, R. 82, Page ID # 597. The district court also allowed Ms. Gilliam to self-surrender. *Transcript of Sentencing Hearing*, R. 88, Page ID # 691-92.

Ms. Gilliam filed a notice of appeal on December 5, 2024. *Notice of Appeal*, R. 83, Page ID # 604. Ms. Gilliam's trial counsel was appointed to represent her on appeal, however trial counsel filed a motion to withdraw with this Court. *United States v. Gilliam*, Case No. 24-2060, *Motion for Withdrawal and Substitution of Counsel*, [Doc. 21] (6th Cir. May 7, 2025). Trial counsel asserted that she believed a conflict of interest existed and requested that this Court appoint new counsel to

"allow Ms. Gilliam…to appropriately pursue all claims that may be available to her, including claims of ineffective assistance of counsel." *Id*. at p. 2. This Court granted trial counsel's motion and appointed undersigned counsel. *United States v. Gilliam*, Case No. 24-2060, *Order*, [Doc. 23] (6th Cir. May 8, 2025); *Ruling Letter*, [Doc. 26] (6th Cir. June 23, 2025).

## II. ISSUE OF ARGUABLE MERIT

**A. Whether Ms. Gilliam's plea should be vacated because the admission that she used threats of drug withdrawal to "cause [the victims] to engage in commercial sex acts" is insufficient to establish the element of coercion necessary to support a conviction for conspiracy to violate 18 U.S.C. § 1591(b)(1), and thus the district court failed to meet the requirements of Fed. R. Crim. P. 11(b)(3) by accepting the plea without the necessary factual basis?**

### 1. Standard of Review

In the absence of an objection at the plea hearing, an appellate claim that a district court did not comply with Fed. R. Crim. P. 11 is reviewed for plain error. *United States v. Taylor*, 627 F.3d 1012, 1017 (6th Cir. 2010). Under this standard, an individual must show "a reasonable probability that, but for the error, he would not have entered the plea." *Id*. (citing *United States v. Dominquez Benitez*, 542 U.S. 74, 83 (2004)). The reviewing court, "assessing the effect of the Rule 11 error, must look to the entire record, not the plea proceedings alone." *Id*.

### 2. The factual basis in the plea agreement was insufficient to meet the "coercion" element of 18 U.S.C. § 1591(b).

Fed. R. Crim. P. 11(b)(3) states that, among other requirements, when

accepting a plea, the district court must "determine that there is a factual basis for the plea." *See also United States v. Webb*, 403 F.3d 373, 379 (6th Cir. 2005) (noting the district court's obligation to verify "the factual basis for concluding that the defendant committed the crime charged."). "The purpose of Rule 11(b)(3) is 'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *Taylor*, 627 F.3d at 1020 (citing *McCarthy v. United States*, 394 U.S. 459, 467 (1969)).

Ms. Gilliam entered a plea in Count One to the offense of conspiracy to engage in sex trafficking. The factual basis for Ms. Gilliam's plea was as follows:

> The parties agree that the following facts are true, accurately describe the defendant's role in the offenses, and provide a sufficient factual basis for the defendant's guilty plea:
>
> From at least August 2019 through October 14, 2021, Defendants Samantha Gilliam and Quiyemabi Summerlin lived in Gilliam's home on Berden Street in Detroit. During this time, Summerlin brought women to stay in the basement of the home, including Adult Victims One through Seven. In Gilliam's home, Summerlin provided the adult victims with heroin and crack cocaine, which they used in the basement. Summerlin and Gilliam used and maintained her home to distribute controlled substances to the adult victims, and for the adult victims to use controlled substances within the home.
>
> In addition, Summerlin arranged commercial sex dates for the adult victims, which they performed in the basement of Gilliam's residence. The adult victims handed the proceeds from their commercial sex dates to Summerlin, or, if Summerlin was not available, directly to Gilliam. **Summerlin and Gilliam knew that the adult victims were addicted to heroin, and that without heroin, they would experience severe**

**withdrawal symptoms. Summerlin required the victims to perform commercial sex acts by withholding or threatening to withhold heroin from them. Summerlin and Gilliam conspired, or agreed, to use the victims' heroin addictions to cause them to engage in commercial sex acts.** Summerlin also used violence to cause the victims to engage in commercial sex acts. Gilliam saw Summerlin use violence against the adult victims.

*Plea Agreement*, R. 60, Page ID # 258-59 (emphasis added).

The elements of the substantive offense of the conspiracy are that "(1) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person; (2) the defendant knew that force, fraud, or coercion would be used to cause the person to engage in a commercial sex act, and (3) the offense was in, or affected, interstate or foreign commerce." 18 U.S.C. § 1591(b)(1); *Plea Agreement*, R. 60, Page ID # 257.

"Coercion" means "threats of serious harm to or physical restraint against any person" or "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to…any person[.]" 18 U.S.C. § 1591(e)(2)(A),(B). "Serious harm" means:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

18 U.S.C. 1591(e)(5).

In Ms. Gilliam's case, the bare assertion that the victims would experience

"severe withdrawal symptoms" without the heroin supplied by Mr. Summerlin does not, without more, establish "serious harm" necessary to meet the coercion element of 18 U.S.C. § 1591.

The lack of proof on this element in Ms. Gilliam's case should be contrasted with the testimony in *United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015). In *Mack*, the Government presented a theory that the defendant had "coerced the victims into prostituting themselves by initially supplying them with drugs under the pretense that they were free. When he suddenly cut them off and demanded payment, he exploited their addiction, which his previous supply of free drugs had cultivated." *Id*. at 1081. Present in *Mack*, but absent in Ms. Gilliam's case, though, was testimony from the victims about the withdrawal symptoms they experienced and the direct connection between those symptoms and the defendant's conduct of creating fictitious drug debt then only supplying heroin after sex acts were completed. *Id*. at 1078-79, 1081-83 (describing, for example, that without drugs, one of the victims would "sweat, vomit, shake, and kick her legs uncontrollably[,]" while another experienced "hot and cold sweats, inability to sleep, restless leg syndrome, shakes, and diarrhea.").

"Withdrawal symptoms" is a broad phrase that can describe a variety of effects on a person when they decrease or stop using drugs. *See, e.g.*, *National Institute of Health*, National Cancer Institute Dictionary of Cancer Terms,

*Withdrawal* ("A term used to describe the physical and mental symptoms that a person has when they suddenly stop or cut back the use of an addictive substance, such as opiates and opioids, nicotine products, or alcohol. The withdrawal symptoms that a person has depend on many factors, such as the substance that was used, how often it was used, and the length of time it was used.").[2]

The National Institute of Health ("NIH") notes that early symptoms of withdrawal may include "agitation, anxiety, muscle aches, increased tearing, insomnia, runny nose, sweating, [or] yawning." *National Institute of Health*, MedLine Plus, Opiate and Opioid Withdrawal.[3] Later symptoms include "abdominal cramping, diarrhea, dilated pupils, goosebumps, nausea, [and] vomiting". *Id*. The NIH also states that "these symptoms are very uncomfortable but are not life threatening." *Id*.

So, while there is no doubt that "withdrawal symptoms" *could* be related to serious physical pain or discomfort, the phrase is not so well-defined that asserting it in a plea agreement automatically establishes "physical harm…sufficiently serious….sufficiently serious, under all the surrounding circumstances, to compel a reasonable person…to perform or to continue performing commercial sexual

---

[2] Accessible at https://www.cancer.gov/publications/dictionaries/cancer-terms/def/withdrawal (last accessed Nov. 5, 2025).

[3] Available at https://medlineplus.gov/ency/article/000949.htm (last accessed Nov. 5, 2025).

activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(5).

Without specific testimony or proof about the victims and their addictions, it may have been that – due to their specific physical characteristics – the victims in Ms. Gilliam's case experienced only minor withdrawal symptoms such as a runny nose, sweating, or yawning when not using drugs. While perhaps uncomfortable, it would not be reasonable to perform commercial sex acts to avoid those particular symptoms of withdrawal.

Additionally, there was no testimony or evidence that the victims in Ms. Gilliam's case were somehow dependent only on Mr. Summerlin for their drug supply or that he was in a position to manipulate them. In *Mack*, the defendant first supplied the victims with free drugs to fuel their addictions, then unexpectedly cut them off and demanded money. 808 F.3d at 1081-82. With this unpayable "debt", and a drug supply that was explicitly given only after commercial sex acts were performed, Mack was able to control the victims. *Id*.

If Mr. Summerlin could not control the victims' access to drugs from other sources, then he exercised little coercive power over them as a result of their addictions. While Mr. Summerlin also used threats of physical violence against the victims – certainly a means of direct control – Ms. Gilliam was not alleged to have conspired with Mr. Summerlin about using force to elicit commercial sex acts. *Plea Agreement*, R. 60, Page ID # 258-59. Nor was there a factual connection between

the physical violence Mr. Summerlin perpetrated and the Ms. Gilliam's agreement with Mr. Summerlin to withhold drugs from the victims.

While the Government may, indeed, have been able to develop this information at trial, it was not present in the factual basis for the plea agreement, nor was it sufficiently examined by the district court during the plea hearing. For these reasons, the factual basis for Ms. Gilliam's plea to Count One is insufficient to meet the coercion element of 18 U.S.C. §1591, and Ms. Gilliam's plea should be vacated due to the district court's failure to satisfy Fed. R. Crim. P. 11(b)(3).

### 3. The record establishes a reasonable probability that, had Ms. Gilliam known her conduct did not meet the elements of 18 U.S.C. §1591, she would not have pleaded guilty.

At a pretrial hearing on November 6, 2023, the Government stated that it had extended an offer to Ms. Gilliam to a plea that would allow her to be sentenced without the fifteen-year mandatory minimum sentence required by 18 U.S.C. §1591. *Transcript of Bond Violation Hearing*, R. 94, Page ID # 809-10. The details of the offer were not explained, but the Government noted that Ms. Gilliam had rejected that offer and that it appeared the case would need to proceed to trial. *Id*.

That position did not change for the pendency of the case. At the pretrial conference held on January 18, 2024, trial counsel for Ms. Gilliam stated:

> In terms of Ms. Gilliam, it has been our position that she is not guilty and she wants to proceed to trial. The government has made a – issued a Rule 11 for Ms. Gilliam. We have discussed it. I think her position is that she wishes to proceed to trial.

*Transcript of Pretrial Conference*, R. 93, Page ID # 775.

Without any additional information in the record as to what changed, Ms. Gilliam entered a plea on April 30, 2024 to what appears to have a been a similar – or the same – plea offer made at the November 6, 2023 hearing.

The record demonstrates that Ms. Gilliam had strong reasons to avoid a plea likely to result in a lengthy custodial sentence. As the district court observed, Ms. Gilliam was an important provider for her two children, she worked a full-time job, and she was experiencing health difficulties related to cancer while on release status. *Transcript of Pretrial Release Violation Hearing*, R. 95, Page ID # 783, 792-93. As noted above, she expressed, through her counsel, her claim of innocence to the charges she faced. Had she been made aware, through a properly conducted plea colloquy, that her conduct was insufficient to support her conviction, there is a reasonable probability that she would not have entered that plea.

Ms. Gilliam's conviction for conspiracy to engage in commercial sex trafficking was serious, with long lasting impacts to her life beyond the felony conviction and lengthy sentence of incarceration. She is required to register as a sexual offender, comply with supervision upon her release, and live with many other collateral consequences. It is in the interests of justice that her plea be vacated, and that she be permitted to make a decision about her plea with full knowledge about the facts and law of her case.

## III. REASONS SUPPORTING COUNSEL'S BELIEF THAT AN APPEAL IS FRIVOLOUS.

### A. The appellate waiver in Ms. Gilliam's plea agreement likely forecloses any argument concerning the factual basis of her plea or the district court's compliance with Fed. R. Crim. P. 11.

Ms. Gilliam's plea agreement contained a provision by which she agreed to "waive[] any right she may have to appeal her conviction on any grounds" and also to appeal her sentence, provided it did not exceed the statutory maximum. *Plea Agreement*, R. 60, Page ID # 271.

This Court has consistently upheld the validity of appellate waivers, provided that the defendant enters the waiver knowingly and voluntarily. *See e.g.*, *United States v. Hollins-Johnson*, 6 F.4th 682 (6th Cir. 2021) (upholding appellate waiver and noting "Criminal defendants may waive their right to appeal as part of a plea agreement so long as the waiver is made knowingly and voluntarily") (citation omitted). It is undersigned counsel's opinion that, on the current record, Ms. Gilliam is unable to meet the standard of arguable merit with respect to an argument that her appellate waiver was not made knowingly and voluntarily.

Ms. Gilliam's signature is present on the plea agreement containing the appellate waiver. *Plea Agreement*, R. 60, Page ID # 276. By signing, Ms. Gilliam affirmed that she and her attorney had reviewed the entire document, that she understood it, and agreed to all of its terms. *Id.*

At the plea hearing, the district court reviewed the plea agreement with Ms.

Gilliam, and the Government also noted that the agreement contained an appeal waiver and repeated the language of the waiver. *Transcript of Plea Hearing,* R. 89, Page ID # 700. This Court has upheld the validity of an appellate waiver where, even though the district court did not discuss the waiver with the defendant, the Government referenced the waiver during the plea hearing. *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006) ("Our cases make clear that the proper inquiry under Rule 11 is whether the defendant was informed of and understood the plea agreement.").

This Court has also upheld appellate waivers where the district court questioned the defendant's understanding of the provisions of the plea agreement and the defendant responded under oath that he understood everything. *See United States v. Toth*, 668 F.3d 374, 377-79 (6th Cir. 2012). Here, Ms. Gilliam was given the same opportunity and expressed her understanding of the terms of the plea. *See Transcript of Plea Hearing*, R. 89, Page ID # 704-12.

Ultimately, Ms. Gilliam received a below-guidelines sentence and the record contains affirmative evidence that her appellate waiver was knowing and voluntary. While she may have additional claims to pursue against trial counsel related to the basis for the entry of her plea, those claims have not been developed in the record for this direct appeal. Counsel's belief is that, to the extent Ms. Gilliam may have arguably meritorious claims discussed above, they are foreclosed by the appellate

waiver in her plea agreement and counsel is unable to present a non-frivolous argument to the contrary at this stage.

In making this motion, counsel asserts that that he has reviewed the entire trial record, to include transcripts of the following proceedings: October 25, 2022 pretrial release violation hearing, R. 95, Page ID # 815; November 23, 2023 bond violation hearing, R. 94, Page ID # 796; January 18, 2024 pretrial conference, R. 93, Page ID # 767; April 30, 2024 plea hearing, R. 89, Page ID # 694; November 21, 2024 sentencing hearing, R. 88, Page ID # 653.

## IV. CONCLUSION

For these reasons, counsel respectfully moves this Honorable Court for entry of an order permitting him to withdraw as appellate counsel for Ms. Gilliam.

Respectfully submitted,

/s/ Tyler M. Caviness
TYLER M. CAVINESS (TN BPR #036273)
LAW OFFICE OF TYLER M. CAVINESS
625 Market Street, Suite 1000
Knoxville, TN 37902
(865) 936-9499
tyler@cavinesslawfirm.com
*Counsel for Samantha Gilliam*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. Rule 25(d), I hereby certify that a true and exact copy of the foregoing was forwarded, via the Court's electronic filing ("ECF") system, this 13th day of November, 2025, to:

Tara Hindelang
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9543
*Counsel for the Government*

Pursuant to 6 Cir. R. 12(c)(4)(C), I certify that a true and exact copy of the foregoing was forwarded via USPS First Class Mail, this 13th day of November to:

Samantha Gilliam. Register No. 89403-509
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

I further certify that, on this the 13th day of November, I provided written notice to Ms. Gilliam that she has twenty-one days from the date of service to file a brief in support of reversal of her conviction.

/s/ Tyler M. Caviness
TYLER M. CAVINESS

<h1 style="text-align:center">ADDENDUM</h1>

## Designation of Relevant Documents

Criminal Complaint, R. 1, Page ID # 4

Order Setting Conditions of Release, R. 8, Page ID # 82

Appearance Bond, R. 9, Page ID # 87

Superseding Indictment, R. 23, Page ID # 94

Second Superseding Indictment, R. 43, Page ID # 191

Motion to Revoke Defendant Gilliam's Bond and Requesting a No-Contact Order for Summerlin, R. 32, Page ID # 138.

Transcript of October 25, 2022 Hearing on Pretrial Release Violation, R. 95, Page ID # 815

Order Granting Motion for No Contact Order, R. 37, Page ID # 163

Combined Motion and Brief in Support of Motion to Suppress Statements Made in Violation of M. Gilliam's 5th Amendment Right to Remain Silent, R. 39, Page ID # 174

Response to Defendant Gilliam's Motion to Suppress Statement (ECF No. 39), R. 42, Page ID # 186

Motion to Withdraw [ECF 39] Motion and Brief in Support of Motion to Suppress Statements Made in Violation of Ms. Gilliam's 5th Amendment Right to Remain Silent, R. 44, Page ID # 204

Petition for Action on Conditions of Pretrial Release, R. 53, Page ID # 226

Transcript of November 6, 2023 Bond Violation Hearing, R. 94, Page ID # 796

Plea Agreement, R. 60, Page ID # 255

Transcript of April 30, 2024 Plea Hearing, R. 89, Page ID # 694.

Defendant Samantha Gilliam's Sentence Memorandum and Request for a Variance from the Guidelines, R. 77, Page ID # 562

Government's Sentencing Memorandum, R. 79, Page ID # 574

Transcript of November 21, 2024 Sentencing Hearing, R. 88, Page ID # 653

Judgment, R. 82, Page ID # 597

Notice of Appeal, R. 83, Page ID # 604